Filed 6/21/16  P. v. Lavatai CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>MIKA LAVATAI,<br><br>　　　Defendant and Appellant. | B264293<br><br>(Los Angeles County<br>Super. Ct. No. BA408344) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Deputy Attorney General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Mika Lavatai appeals from the judgment after a jury convicted him of second degree murder. He argues that the trial court erroneously refused his requested instruction on involuntary manslaughter, and violated his Fifth Amendment rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) by admitting evidence of incriminating statements Lavatai made to law enforcement. We conclude that there was no substantial evidence from which a jury could reasonably find Lavatai committed involuntary manslaughter but not murder, and that his Fifth Amendment argument is not preserved for appeal. Therefore, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *Renteria Goes Dancing with His Girlfriend*

In August 2012 Juan Carlos Renteria (Renteria) had been dating Mariela Orellana for approximately two months. Prior to that, she had been dating Armando Campos for two years. When Orellana began dating Renteria, Campos became jealous, told Orellana that he wanted to resume their relationship, and said that Renteria was a "womanizer" who was just "playing around" with her.

On August 8, 2012 Renteria went dancing with Orellana at a restaurant in the City of Commerce, at approximately 11:00 p.m. At approximately 12:30 a.m. on August 9, Orellana saw Campos at the restaurant, although Campos left before she and Renteria did.

Renteria took Orellana home and left her house shortly before 3:00 a.m. They made plans to see each other the next day. Orellana later tried to reach Renteria, but her text messages to him were not returned.

2

B.       *Lavatai and His Accomplice Attack Renteria*

In the early morning hours of August 9 Renteria's brother Armando was lying on the couch in the Renteria family's second floor apartment. Earlier in the evening he had seen a heavy-set man, which investigation later determined was Deontae Dean, wearing a black sweatshirt with a hoodie covering his head and "sitting at the curb line" for 10 to 15 minutes. When he heard the sound of Renteria's truck, Armando "got up and looked through the window." Armando saw Renteria start to open the door, turn around, and go to the man sitting down at the curb. Armando then observed a second man, "dressed all in black," approach Renteria from behind and hit him on the back of the head. Armando ran downstairs and out to the street.

When Armando arrived outside the apartment building, the two men were attacking his brother in the street, and Renteria was bleeding from his torso and his arms. Renteria told Armando not to help him or get involved. The two men continued to hit Renteria, even after he fell to the ground unconscious and unmoving.

Renteria's sister Esmeralda had been sleeping, but awoke when she heard Armando screaming. She looked out the window and saw two individuals fighting with her brother. She screamed at them to stop, and then ran downstairs. When she arrived outside, she saw that Renteria "was bleeding a lot," his shirt was torn, and there was "blood just all over." She saw the two men attacking Renteria while Renteria was trying to "cover and defend himself" by holding his hands up next to his head. She also saw that one of the attackers had a sharp weapon.

Renteria's other brother, Ricardo, had also been sleeping in the apartment when he awoke to the sound of people screaming. Ricardo ran downstairs, saw the fight and his brother and sister screaming, and went inside to call the police.

Eventually, the two men ran away. Armando approached his brother and saw that he was covered in blood and unconscious, but still breathing. Renteria regained consciousness and began walking toward the house, but collapsed at the door. He fell into the arms of Esmeralda, who "was able to see that he had a lot of wounds, and since he didn't have his shirt completely [on, she] saw that he had a wound on his heart and he

3

had other ones on his arms." Renteria began convulsing. An ambulance came and took him to the hospital.

Renteria died from a stab wound to the heart. He had six separate stab wounds, including four to the back, one to the arm (a defensive wound), and one to the chest. Renteria lived for a day after the attack, but lost too much blood to survive.

C. *Lavatai Explains to Law Enforcement That He Attacked Renteria at the Request and Direction of Campos*

Deputy Sheriff Kevin Acebedo and another deputy subsequently spoke with Lavatai, who admitted in a recorded interview the People played for the jury that he and Dean stabbed Renteria pursuant to Campos's request and direction.[1] Lavatai told Deputy Acebedo that he had never previously seen the man he and Dean attacked, who Lavatai ultimately learned was Renteria, but "he did it to help Campos out because he considered Campos a friend."

Lavatai explained that at approximately 8:00 p.m. Campos asked him to come with him in his car, and they eventually drove to the restaurant in the City of Commerce. Lavatai waited outside in the car for an hour or two while Campos was inside. Around midnight, Campos came out of the restaurant. When Renteria came out of the restaurant, the two men began following him in Campos's car. Renteria was driving a pickup truck. Lavatai sat in the back seat of Campos's car as they followed Renteria to his house. Lavatai was wearing black clothes and gloves because he thought Campos wanted him to "rough [Renteria] up or something."

Lavatai explained to the deputies that when he and Campos arrived at Renteria's house, Campos parked away from but "within sight of" the apartment building. Lavatai knew it was the right building because he and Campos has scouted it several days or the night before, and Campos told Lavatai to "take care of business on him" there. The plan

---

[1]     The People also played for the jury a surveillance video obtained from a store near the attack.

4

was that Dean would distract the man by engaging him in a conversation, Lavatai would come up and attack Renteria from behind, and then Dean would join in the assault.

When Renteria arrived, Campos was speaking to Lavatai from his phone in the car, and said, "that's the guy." Lavatai went up to Renteria and first hit him in the head and then "started socking him up." Lavatai then stabbed Renteria "a couple of times" with a butterfly knife Campos had given him.[2] Dean, also dressed in black, used a long pole or a pipe.

Campos stayed in the car during the attack. After the attack, Lavatai and Dean ran away and Campos picked them up. Lavatai told the detectives, "After . . . what we did, we just, we just left, we just left. I didn't look back, I didn't care if he was on the floor or what."

Lavatai said that Campos had told him to attack Renteria because Renteria had been "flirting with his girl." Lavatai explained to the deputies that he attacked Renteria because Campos wanted him to "take[ ] care of" him and "beat his ass." When asked whether Lavatai ever thought that Campos meant kill the victim, Lavatai said, "Yeah, yeah."

D.     *The Jury Convicts Lavatai, and the Trial Court Sentences Him*

The People charged Lavatai with the willful, deliberate, and premeditated murder of Renteria. The People also alleged that Lavatai personally used a deadly and dangerous weapon in the commission of a felony within the meaning of Penal Code section 12022, subdivision (b)(1),[3] and that Lavatai intentionally killed Renteria by means of lying in

---

2     A butterfly knife is a knife "with a handle that breaks apart exposing a blade that comes from the center" (*People v. Davis* (1988) 202 Cal.App.3d 1009, 1013) and "is opened rapidly with one hand and is ready for use" (*People ex rel. Mautner v. Quattrone* (1989) 211 Cal.App.3d 1389, 1398).

3     Statutory references are to the Penal Code.

wait, within the meaning of section 190.2, subdivision (a)(15), and for financial gain, within the meaning of section 190.2, subdivision (a)(1).

The jury found Lavatai guilty of second degree murder, and found true the allegation that he personally used a deadly or dangerous weapon. The trial court sentenced Lavatai to 16 years to life in prison (15 years to life for second degree murder plus one year for the weapons enhancement), awarded 802 days of actual custody credit, and imposed various fines and fees. Lavatai timely appealed.

## DISCUSSION

A. *The Trial Court Did Not Err in Refusing To Instruct on Involuntary Manslaughter*

Lavatai argues that the trial court erroneously refused to instruct the jury on involuntary manslaughter as a lesser-included offense of murder "because there was evidence [he] did not intend to kill Renteria and that he did not consciously disregard the risk to human life." Lavatai contends that he was entitled to an instruction on involuntary manslaughter because there was evidence he made a statement indicating "he never intended to do anything but rough up Renteria, that he stabbed him during the heat of the fight and was unaware [Renteria] had died."

"Involuntary manslaughter . . . is the unlawful killing of a human being without malice. (§ 192.) It is statutorily defined as a killing occurring during the commission of 'an unlawful act, not amounting to a felony; or in the in the commission of a lawful act which might produce death, [accomplished] in an unlawful manner, or without due caution and circumspection.' (§ 192, subd. (b).) Although the statutory language appears to exclude killings committed in the course of a felony, the Supreme Court has interpreted section 192 broadly to encompass an unintentional killing in the course of a noninherently dangerous felony committed without due caution or circumspection." (*People v. Brothers* (2015) 236 Cal.App.4th 24, 31, citing *People v. Burroughs* (1984) 35 Cal.3d 824, 835 and *People v. Bryant* (2013) 56 Cal.4th 959, 972.)

6

Involuntary manslaughter is a lesser included offense of murder. (*People v. Beltran* (2013) 56 Cal.4th 935, 942; *People v. Thomas* (2012) 53 Cal.4th 771, 813.) "An instruction on a lesser included offense must be given only if there is substantial evidence from which a jury could reasonably conclude that the defendant committed the lesser, uncharged offense but not the greater, charged offense." (*Thomas*, at p. 813.) "If the evidence presents a material issue of whether a killing was committed without malice, and if there is substantial evidence defendant committed involuntary manslaughter, failing to instruct on involuntary manslaughter would violate the defendant's constitutional right to have the jury determine every material issue. [Citation.] Malice is implied, however, when a killing results from an intentional act, the natural consequences of which are dangerous to human life, and the act is deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." (*People v. Cook* (2006) 39 Cal.4th 566, 596; see *People v. Brothers*, *supra*, 236 Cal.App.4th at p. 35 ["when . . . the defendant indisputably has deliberately engaged in a type of aggravated assault the natural consequences of which are dangerous to human life, thus satisfying the objective component of implied malice as a matter of law, and no material issue is presented as to whether the defendant subjectively appreciated the danger to human life his or her conduct posed, there is no sua sponte duty to instruct on involuntary manslaughter"].)

Even considering Lavatai's statement to Deputy Acebedo that Campos only wanted him to "rough up" Renteria, there was no substantial evidence "from which a reasonable juror could entertain a reasonable doubt" (*People v. Brothers*, *supra*, 236 Cal.App.4th at p. 34) that Lavatai had acted in conscious disregard of the risk his conduct posed to Renteria's life. After scouting the location a day or two before committing the crime, Lavatai orchestrated a plan of attack in which Dean would create a diversion while Lavatai snuck up on Renteria from behind. Lavatai attacked Renteria with a knife while his accomplice beat Renteria with a pipe. Lavatai stabbed Renteria repeatedly, including once to the chest that penetrated his heart and killed him, and then ran away without looking back to see whether he had killed Renteria or, in his words,

7

merely roughed him up. Nor did Lavatai distinguish between roughing up Renteria and killing him. As Lavatai admitted to Deputy Acebedo, he knew that Campos wanted him to "take care of" Renteria, and that taking care of Renteria included killing him.

There was no evidence that the killing was accidental or negligent, or that Lavatai did not understand the risk to Renteria's life that his planned and coordinated attack posed. Lavatai did not "commit[ ] a mere misdemeanor battery by administering [a] beating" or "start a fist fight in which an unlucky blow resulted in the victim's death." (*People v. Cook*, *supra*, 39 Cal.4th at pp. 596-597.) To the contrary, Lavatai attacked from a place of hiding with a deadly weapon, knowing his victim might die, and not caring if he did. The trial court did not err by refusing Lavatai's request to instruct the jury on involuntary manslaughter. (See *People v. Guillen* (2014) 227 Cal.App.4th 934, 1028 [involuntary manslaughter instruction not appropriate where the defendant "knew the risk involved" in a violent attack on the victim and there was no reasonable doubt from the evidence that the defendant acted with the intent to kill or a conscious disregard for human life]; *People v. Evers* (1992) 10 Cal.App.4th 588, 596 ["where the defendant realizes and then acts in total disregard of the danger, the defendant is guilty of murder based on implied malice," unless the malice is otherwise negated by heat of passion or imperfect self-defense].)

B.      *Lavatai Forfeited His Argument That the Detectives Obtained Statements from Him in Violation of His Fifth Amendment Rights*

Lavatai argues that the trial court erred by allowing Deputy Acebedo to testify about the statements Lavatai made to him because the detectives obtained them in violation of *Miranda*. Lavatai argues that Deputy Acebedo subjected him to custodial interrogation during the interview without giving him any *Miranda* warnings, the judge at the preliminary hearing erred in denying his motion to suppress, and the court should have suppressed the statements at trial.

Lavatai, however, never made a motion at trial to suppress his statements to the detectives, and the trial court never ruled on the admissibility of the statements. Lavatai

8

did not object to the prosecutor's questioning of Deputy Acebedo at trial about his interview with Lavatai, nor did Lavatai object when the prosecutor played the recording of the interview for the jurors and gave them copies of the transcript of the interview. The only objection was at the preliminary hearing.

An objection made at a preliminary hearing is not preserved for appeal unless renewed at trial. (See *People v. Zambrano* (2007) 41 Cal.4th 1082, 1139 ["[a]bsent a ruling or stipulation that an objection" to testimony at the preliminary hearing "would be deemed renewed at trial, defendant's failure to renew it means the issue was not preserved for appeal"], disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Armstrong* (1991) 232 Cal.App.3d 228, 233, fn. 6 [defendant's "failure to renew, in the superior court, an objection made to [an exhibit] at the preliminary hearing on grounds of hearsay or lack of foundation constituted a waiver, barring consideration of those issues on appeal"]; *People v. Remington* (1990) 217 Cal.App.3d 423, 429-431 [defendant's failure to renew at trial a venue objection made at the preliminary hearing waived the right to object to venue on appeal]; see also *People v. Crittenden* (1994) 9 Cal.4th 83, 126 ["a pretrial ruling on a claimed violation of a defendant's Fifth Amendment rights is subject to reconsideration by the trial court, and an objection on Fifth Amendment grounds to the admissibility of the evidence is waived if not made at trial when the evidence is offered"].) Therefore, Lavatai forfeited his argument that the trial court should have suppressed his statements to Deputy Acebedo.

Lavatai relies on *People v. Crittenden*, *supra*, 9 Cal.4th 83, to argue that, although he "could have renewed the objection at trial, it would have been futile to do so, as he was entitled to no further hearing, and nothing had changed since the court denied his motion." *Crittenden*, however, involved very different procedural circumstances. The defendant in *Crittenden* "unsuccessfully moved, during his preliminary hearing . . . to exclude his statements on the ground they were obtained in violation of *Miranda*." (*Id.* at p. 125.) So far, so good, for Lavatai's argument. The defendant in *Crittenden*, however, "renewed his motion to exclude the statements on *Miranda* grounds" at trial, and the trial court denied the motion. (*Ibid.*) After the trial court granted the defendant's

9

motion to change venue and transferred the case to another county, the defendant again moved to exclude the statements, but this time only under Evidence Code section 352 and not "expressly on the basis of *Miranda*." (*Ibid*.) The Supreme Court held that, "under [these] circumstances," the "defendant did not waive the *Miranda* issue." (*Id.* at p. 126.) The Supreme Court stated that "if a motion to exclude evidence is made raising a specific objection, directed to a particular, identifiable body of evidence, *at the beginning of or during trial* at a time when the trial judge can determine the evidentiary question in its appropriate context, the issue is preserved for appeal without the need for a further objection at the time the evidence is sought to be introduced." (*Id.* at p. 127, emphasis added; see *People v. Solomon* (2010) 49 Cal.4th 792, 821 ["[a] motion in limine can preserve an appellate claim, so long as the party objected to the specific evidence on the specific ground urged on appeal at a time when the court could determine the evidentiary question in the proper context"].)

Unlike the defendant in *Crittenden*, however, Lavatai did not make a *Miranda* objection before, at the beginning of, or during the trial, by way of a motion in limine or otherwise, to the trial judge. Indeed, there is no indication in the record the trial judge had any knowledge that Lavatai had made a motion at the preliminary hearing to suppress his statements to Deputy Acebedo, or that or how the judge presiding over the preliminary hearing had ruled on the motion. The trial court did not erroneously rule on an objection Lavatai never made at trial, and Lavatai's objection at the preliminary hearing did not preserve the issue for appeal.[4]

_____

[4]      Lavatai argues for the first time in his reply brief, in two sentences and without explanation for why he did not make the argument in his opening brief, "[t]o the extent that this court disagrees that the issue is preserved for appeal," trial counsel for Lavatai "was ineffective for failing to renew the motion." The argument, which could have been anticipated because there was no objection at trial, is forfeited. (See *People v. Bonilla* (2007) 41 Cal.4th 313, 349-350 [waiting until reply brief to make an argument forfeits the argument]; *People v. Smithey* (1999) 20 Cal.4th 936, 1017, fn. 26 ["'points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before'"].) Lavatai's argument also fails because Lavatai does not address the issue of prejudice. (See *People v. Benavides* (2005) 35 Cal.4th 69, 92-93

**DISPOSITION**

The judgment is affirmed.


       SEGAL, J.


We concur:


       PERLUSS, P. J.


       BLUMENFELD, J.[*]

---

["[t]o prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense"]; *In re Cox* (2003) 30 Cal.4th 974, 1019 ["[t]here are two components to an ineffective assistance of counsel claim: deficient performance of counsel and prejudice"].)

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.